IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY AS SUBROGEE OF JOHN CORRERO** | | **PLAINTIFF** |
| vs. | | CIVIL ACTION No.: 3:23-CV-142-HTW-LGI |
| **BRIGHTON SOUTHERN HOMES, LLC, DONALDO CASTILLO, and NALDO'S MASONRY, LLC** | | **DEFENDANTS** |

**ORDER ON PRETRIAL MOTIONS**

BEFORE THIS COURT are [Docket 27], a Motion to Exclude Expert Testimony of Pierce Klassen and Donaldo Castillo by Plaintiff State Farm Fire and Casualty Company ("State Farm"); [Docket 31], a Motion to Exclude Expert Testimony of Timothy Hassenboehler and Norman Presson by Defendants Donaldo Castillo and Naldo's Masonry, LLC (collectively, "Castillo"); and [Docket 43], Motions in Limine by Castillo.  This Court heard argument on [Docket 27] and [Docket 31] on August 21, 2024.  This Court, in consideration of the written and oral arguments of the parties, their submitted evidence, and the relevant facts and law, finds as follows.

### I.   BACKGROUND

In 2018, Defendant Brighton Southern Homes, LLC ("Brighton"), general contractor to a home's construction, subcontracted Castillo to perform masonry work on an outdoor fireplace.  In 2022, the home suffered a fire.  State Farm insured the home, paid off the policy to homeowner, and, as subrogee, sought to recover that payment from the putative tortfeasors.  According to State Farm, its cause and origin investigator concluded that the fire had started at the outdoor fireplace, where hot gases had entered a gap between the top of the metal prefabricated firebox and the surrounding masonry and ignited the wood framing.  State Farm then sued Brighton for breach of

contract and Brighton and Castillo for negligence and breach of warranty, alleging the contractors had failed to seal the gap over the firebox with a non-combustible material as necessary.

## II.   LAW AND DISCUSSION

### A. Federal Subject-Matter Jurisdiction

District courts have "diversity" federal subject-matter jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States." 28 U.S.C. § 1332(a). Diversity jurisdiction must have "complete diversity"—that is, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968)).

This Court is presently satisfied that complete diversity of citizenship exists between the Plaintiff and Defendants in this action. State Farm brings this suit as subrogee of the homeowner. State Farm alleged that it "insured [the homeowner] against loss … and paid such losses pursuant to said contract[,] thereby becoming both contractually and equitably subrogated to [the homeowner's] claims as against Defendants," and "brings this suit to recover its contractual and equitable subrogation interests from Defendants." [Docket 1] at ¶¶ 1, 32. Therefore based on this allegation and the scope of requested relief, State Farm is the real party in interest bringing this suit.[1] State Farm alleged that it is "a foreign corporation existing under the laws of the State of Illinois." *Id.* at ¶ 1. State Farm also claims it resides in "McLean County, IL," in its Civil Cover

---

[1] In a subrogation suit, courts sitting in diversity jurisdiction look to the citizenship of the real parties in interest according to state law. *See, e.g.*, *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093–95 (9th Cir. 2004). Under Mississippi rules of civil procedure regarding real parties in interest, "in subrogation cases, regardless of whether subrogation has occurred by operation of law, assignment, loan receipt, or otherwise, if the subrogor no longer has a pecuniary interest in the claim the action shall be brought in the name of the subrogee." Miss. R. Civ. P. 17(b).

Sheet. This Court, based on the pleadings, finds that State Farm is incorporated and has a principal place of business[2] outside of Mississippi.[3] State Farm pleads—and Brighton admits—that all of the members[4] of limited liability company Brighton are "residents of, and are domiciled in, the [S]tate of Mississippi," [Docket 1] at ¶¶ 2–4; [Docket 7] at ¶¶ 2–4. State Farm pleads—and Castillo admits—that the sole member of Naldo's Masonry, LLC, is a "resident of, and is domiciled in, the [S]tate of Mississippi." [Docket 1] at ¶¶ 8–10; [Docket 3] at ¶¶ 8–10. State Farm pleads—and Castillo admits—that Donaldo Castillo also is a "resident of, and is domiciled in, the [S]tate of Mississippi." [Docket 1] at ¶ 6; [Docket 3] at ¶ 6.

This Court finds that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as State Farm pleads. Also, "extensiv[e]" fire damage "to the home's structure and the personal property contents within the Property" is harm that facially puts the amount in controversy in excess of $75,000, exclusive of interests and costs.[5]

This Court, thus, is presently satisfied that it has diversity jurisdiction to hear this matter. Under diversity, federal courts apply substantive law of the forum state, here Mississippi, and federal procedural law. *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (citing *Gasperini v. Ctr. For Humanities*, Inc., 518 U.S. 415, 426–27 (1996)). The Federal Rules of Evidence govern

---

[2] "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

[3] *See also, e.g., Days v. Aurora Loan Servicing, LLC*, No. 1:11-CV-01114-RWS, 2011 WL 13220720, at *1 (N.D. Ga. Sept. 12, 2011) ("State Farm Fire and Casualty Company is an Illinois corporation with its principal place of business in Illinois."); *State Farm Fire v. Huguely*, No. 20-1127, 2020 WL 4500100 (4th Cir. Feb. 27, 2020).

[4] "[T]he citizenship of a [limited liability company] is determined by the citizenship of all of its members." *Harvey*, 542 F.3d at 1080.

[5] State Farm has also since apprised the Court of the approximate amount State Farm paid out to the homeowner, which substantially exceeds $75,000.

the admissibility of evidence in diversity cases." *Reed v. Gen. Motors Corp.*, 773 F.2d 660, 663 (5th Cir. 1985) (citing Fed. R. Evid. 1101(b); *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 609 F.2d 820, 821–22 (5th Cir.1980)).

### B. *Daubert* motions

In [Docket 27], State Farm moves to exclude expert testimony from Defendant Donaldo Castillo ("DC") and the expert testimony of Castillo's damages expert, Pierce Klassen, under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In [Docket 31], Castillo moves to exclude certain testimony from State Farm's expert witnesses Timothy Hassenboehler and Norman Presson, also under Rule 702 and *Daubert*.

Rule 702 sets forth:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[T]he district court serves as a gatekeeper to ensure that scientific evidence is relevant and reliable." *Kim v. Am. Honda Motor Co., Inc.*, 86 F.4th 150, 160 (5th Cir. 2023) (citing *Daubert*, 509 U.S. at 590–593). The proponent of the "expert testimony must prove the expert is qualified and will offer relevant and reliable testimony." *Id.*

1. <u>Donaldo Castillo</u>

DC, a defendant in this matter, is a brick mason who was tasked with building the brick surround of the fireplace at issue. Castillo designated DC as "a non-retained expert in the field of brick masonry and the masonry work involved in fireplaces and chimneys like the subject fireplace and chimney." [Document 28-1] at 2. Castillo proffered:

> [DC] will testify regarding brick masonry, the scope of work of brick masonry, his scope of work on this particular project, and the work he performed on this project. It is anticipated that [DC] will testify that his scope of work on this project did not include framing of the subject fireplace and chimney, installation of the firebox, or placing sealant around the firebox. It is further anticipated that [DC] will testify that his scope of work on this project was limited to supplying labor to lay bricks, that the general contractor supplied all materials, and that the general contractor did not supply any sealant for the firebox.

*Id.* State Farm argues that DC's "purported expert opinions will not assist the jury in understanding the evidence or to determine a fact at issue and should be excluded from trial." [Docket 28] at 9. State Farm proposed that the proffered testimony is more accurately fact witness testimony. State Farm, at oral argument, expressed concern that the jury would be prejudiced by DC, a defendant and fact witness, being designated an "expert" by this Court, particularly because whether DC performed his alleged duty is a central issue in the case.

Castillo expects DC to testify as both a fact and expert witness. Castillo claims that DC "was designated to rebut State Farm's conclusory opinions that sealing a firebox was within the brick mason's scope of work" and will opine that "based on his years of experience as a brick mason, installation of a firebox and placing sealant around the firebox is not within the scope of a brick mason's work" and that "this falls within the firebox installer's scope of work who, in this case, was Builder's Specialties." [Docket 38] at 7–8.

DC could testify, subject to objection, substantially as described, without being designated as an "expert" and without counsel characterizing his testimony as "expert opinion." DC may testify as to his understanding of the work he was hired to perform and the work he did perform as a fact witness. DC may also testify as to his understanding of the scope of his responsibilities when building a fireplace, based on his experience as a brick mason. Castillo, nonetheless, has not met its burden under the prongs of Rule 702 for DC to render expert opinions. Indeed, given the centrality of DC's putative duty in this case, it would be unfairly prejudicial for this Court to refer to DC as an "expert" on that matter; it would improperly bolster his credibility to the jury. This Court, therefore, will not designate DC as an expert, nor will it permit him to opine under Rule 702. This Court **grants** State Farm's *Daubert* motion with respect to DC.

2. Pierce Klassen

Castillo designated Pierce Klassen as "a contents expert … being tendered as an expert in the fields of contents valuation, onsite services, and desk adjusting[6] of personal property." [Docket 28-1] at 1. Mr. Klassen prepared a report of about one page "provid[ing] an analysis of the personal property related" to this case. [Docket 28-2] at 1. Mr. Klassen wrote that his "analysis [found] no concrete evidence of damage to personal property that would warrant replacements, except for [a damaged television]" and concluded that "[t]here is no indication of significant soot damage or evidence of items within the provided photo report to support the replacement claims." *Id.* at 1–2. Mr. Klassen opined that State Farm's payments were "unreasonable" and "State Farm should not have paid" the homeowners to replace the property. *Id.* at 2. This opinion apparently rebuts

---

[6] "[D]esk adjusters commonly work for insurers to assess damages and process claims. … [W]hile field adjusters work in the field, desk adjusters work in an office. Desk adjusters typically work on claims that can be handled quickly online or over the phone." *Adjuster*, kin. (last accessed September, 28, 2024), https://www.kin.com/glossary/adjuster/.

State Farm's justification for damages as subrogee. Mr. Klassen also attached a spreadsheet "compar[ing] what State Farm claims to have paid for contents with the actual replacement cost of those items." *Id.* at 1.

State Farm argues that "Klassen's purported expert opinions will not assist the jury in understanding the evidence or to determine a fact at issue and should be excluded from trial." State Farm has two major gripes with Mr. Klassen: first, State Farm alleges that Mr. Klassen's opinions are not based on sufficient facts and data under Rule 702(b). State Farm points out that Mr. Klassen assigned a zero-dollar value to several items while citing a lack of evidence and criticizes Mr. Klassen for failing to conduct interviews or otherwise find the purportedly missing information. State Farm argues this renders his opinions speculative and unreliable. Second, State Farm claims that Mr. Klassen failed to provide adequate detail in his report regarding methodology.

Castillo characterizes these attacks as "challenges to the credibility and weight of [Mr. Klassen's] opinions rather than actual *Daubert* challenges to the reliability of his opinions." [Docket 38] at 3. Castillo argues that the lack of evidence as to the items' value does not undermine Mr. Klassen's point—rather, it *is* his point. Castillo argues, "These opinions are Mr. Klassen pointing out holes or absence of credible evidence in the case that State Farm is attempting to build through its own experts and loss documentation." *Id.* at 5. Castillo also argues that Mr. Klassen's methodology was "patently apparent"—indeed that State Farm itself was able to summarize the methodology as "assign[ing] values to the damaged items by calculating the purchase price and taxes for a replacement cost value and then appl[ying] depreciation." *Id.* at 5–6 (quoting State Farm's own characterization of the method).

Castillo's arguments roughly line up with Mr. Klassen's report. Mr. Klassen specifically notes, regarding the items to which he assigned a zero-dollar value, that the "valuation for custom

Page 7 of 16

items could not be provided due to the absence of essential item details at the time of loss." [Docket 28-2] at 1. He clarifies that "the State Farm field representative did not provide adequate details regarding the drapery's material, dimensions, proof of purchase, and other pertinent information." *Id.* Mr. Klassen apparently comments on the lack of evidence for State Farm's damage claims. State Farm alleges that there exists further information supporting their damage claims that State Farm will present at trial—that this expert should have sought out—such as the testimony of the homeowner.

While perhaps true, under these circumstances, this is would be a matter for cross-examination, not a *Daubert* motion. The same logic applies to the detail of Mr. Klassen's disclosures. Mr. Klassen's methodology may be rudimentary or otherwise lacking, but he provides some explanation and a spreadsheet to show his work. State Farm declined the opportunity to depose Mr. Klassen to explore purported ambiguities or vagaries, so it must do so at trial. Castillo has met the minimum burden of Rule 702 for Mr. Klassen to opine as an expert witness. This Court **denies** State Farm's *Daubert* motion with respect to Mr. Klassen.

    3. <u>Timothy Hassenboehler & Norman Presson</u>

State Farm designated retained experts Timothy Hassenboehler, a forensic engineer, and Norman "Van" Presson, a certified fire investigator. While the two rendered conclusions regarding the cause and origin of—and damage wreaked by—the fire in this matter, Castillo specifically objects to the experts' opinion that "[t]he brick masonry chimney was improperly installed." [Docket 32] at 3 (quoting Mr. Hassenboehler's and Mr. Presson's reports). Castillo argues that Mr. Hassenboehler and Mr. Presson "should be excluded from testifying about the brick masonry, generally, and about Castillo's work, specifically, because any such opinions are speculative and not based on sufficient facts or data." *Id.* at 3.

Castillo argues that the gap between the top of the firebox and the brick fireplace was not,

as the experts characterize, a flaw in the brick masonry "[b]ecause the undisputed evidence shows that [the mason's] scope of work did not include the installing, insulating, or sealing of the firebox insert." *Id.* at 6. As this Court has previously held, however, this *is* disputed, and is a fact question that will go to the jury. *See* [Docket 48] at 3.

State Farm lists purported bases for its experts' opinions:

> Both PE Hassenboehler and CFI Presson concluded that the cause of the fire was a gap at the top of the fireplace opening between the firebox and the brick surround installed by The Castillo Defendants. The experts identified mortar in the gaps between the sidewalls of the fireplace opening and between the hearth and hearth extension, but no mortar on at the top of the opening where the firebox and brick surround meet. The experts concluded that the lack of mortar or some other non-combustible sealant allowed gases to enter the gap between the firebox and brick surround igniting the adjacent combustibles. PE Hassenboehler wrote in his report that "The failure to provide a noncombustible sealant at the top of the firebox and adjacent brick masonry allowed fire gases to ignite the wood framing above the front of the firebox." CFI Presson reached the same conclusion.

[Docket 36] at 8 (internal citations omitted). State Farm clarified in its motion and at oral argument that neither Mr. Hassenboehler or Mr. Presson has offered an opinion on "whether [Castillo's] scope of work included sealing the fireplace and whether the work was done properly." *Id.* at 9. State Farm indeed averred that it does not intend, at trial, to ask its experts *whose* responsibility it was to seal the gap over the firebox with noncombustible material. Castillo has argued in passing that State Farm's experts are not experts in brick masonry, but Castillo does not contradict State Farm's claims that its experts have the requisite training and experience to identify flaws in brick fireplaces as part of their work as a forensic engineer and fire investigator, respectively.

Castillo may dispute the logic of the experts' opinions and may accordingly attack them at trial; however, Castillo's objections are not sound challenges to the reliability of the experts' opinions under Rule 702. This Court **denies** Castillo's *Daubert* motion.

C. **Motions** *in limine*

In [Docket 43], Castillo moves to exclude four different categories of evidence. This Court takes each in turn:

1. Settlement Offers

Castillo argues that "[e]vidence of settlement offers should be excluded from trial." [Docket 43] at 1. Castillo argues that "any such mention [of this evidence] would be irrelevant [and] immaterial and would tend to unfairly prejudice, mislead[,] and confuse the jury." [Docket 44] at 1–2 (citing Fed R. Evid. 408, 411). "State Farm agrees with this proposed *in limine* ruling[,] provided the ruling encompasses all settlement discussions[,]" including "demands and offers." [Docket 47] at 1. Brighton did not respond.

Rule 408 sets forth:

> **(a) Prohibited Uses**. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions**. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

This Court agrees that it would be improper for a party or witness to mention settlement offers or negotiations, in the presence of the jury, to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." *Id.* This Court may admit evidence of settlement offers or negotiations "for a different purpose," such as those listed in Rule 408. *Id.* Because no party has made this Court aware of an intent to admit evidence of settlement offers or negotiations for any purpose, this Court **grants, in part,** the motion. The parties, their counsel, and the witnesses are not to mention or admit evidence of settlement demands, offers, or negotiations. The parties are to instruct their own witnesses of this ruling and not to testify regarding settlement demands, offers, or negotiations. This ruling is without prejudice; if a party later seeks to offer such evidence for a purpose allowed by Rule 408, that party is to raise this intent outside the presence of the jury, prior to eliciting the evidence, so that this Court may rule on any objections.

2. Liability Insurance

Castillo argues that "[e]vidence of liability insurance or lack of liability insurance on the part of any defendant should be excluded from trial." [Docket 43] at 1. Castillo requests this Court to instruct the parties, their counsel, and their witnesses "not to mention or in any way refer to the subject of whether any particular defendant is or is not insured in the presence of the jury during the course of this trial, as any such mention would be irrelevant, immaterial, and would tend to unfairly prejudice, mislead and confuse the jury." [Docket 44] at 2 (citing Fed. R. Evid. 411). "State Farm agrees that evidence of liability insurance is not admissible" but argues some bases by which State Farm may seek to offer evidence that Brighton did not hold or maintain liability insurance. [Docket 47] at 1–2. Brighton did not respond.

Rule 411 sets forth:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

Fed. R. Evid. 411.  This Court agrees that it would be improper for a party or witness to mention, in front of the jury, whether a person or entity was or was not insured against liability to "prove whether [that person or entity] acted negligently or otherwise wrongfully." *Id.*  This Court may admit evidence that Defendants were or were not insured against liability "for another purpose[.]" State Farm offers two such purposes:

Firstly, State Farm intends to prove that Brighton breached a contract with the homeowner by assuring the homeowner that Brighton was covered by liability insurance but failing to maintain it.  State Farm has sued Brighton for breach of contract, but the contractual duties allegedly breached were "selecting and purchasing necessary materials, identifying, hiring, and supervising subcontractors and other workers, supervising, monitoring, and directing the day-to-day construction practices, quality[,] and procedures[,] and ensuring that the contracted work was completed in a professional and workmanlike manner," not a failure to maintain insurance. [Docket 1] at ¶ 34.  As far as this Court is aware, Brighton has consistently denied liability for the fire, and the alleged harms this action ("damage to [the homeowner's] real property[ and] personal property and … additional living expenses due to his home being rendered uninhabitable due to the fire damage," *id.* at ¶36) do not arise from Brighton's inability to pay out an insurance claim.  Therefore, while this purpose for offering the evidence is not excludable under Rule 411, it is irrelevant to this action.  Absent foundation proving such a breach of contract relevant, State Farm will not be permitted to offer evidence of Brighton's lack of liability insurance for this purpose.

Secondly, State Farm intends to show Brighton's representatives falsely claimed they would hold or maintain liability insurance.  State Farm, thus, seemingly asks to use "[e]vidence

that a person … was not insured against liability … to prove whether the person acted … wrongfully;" however, this Court finds that such an impeachment would not be made inadmissible by Rule 411.  The concern of Rule 411 is the use of "liability insurance for the purpose of proving fault, and absence of liability insurance as proof of lack of fault." Fed. R. Evid. 411 advisory committee's note.  Here, State Farm would not use Brighton's lack of liability insurance to prove lack of fault, but to attack the credibility of its representatives.  This Court does not rule that this impeachment will necessarily be admissible; it must pass the muster of other rules, such as, perhaps, Rule 608(b), regarding the use of specific instances of conduct to attack a witness's character for truthfulness.  This evidence may also inject unfair prejudice: the jury could deliberate based on potentially improper considerations (such as the ability of Brighton to pay a judgment) or infer, by process of elimination, that Castillo *was* covered by liability insurance.  Therefore, if any party seeks to admit this evidence, it should apprise this Court and the other parties of this intent outside the presence of the jury, prior to eliciting the evidence, so that this Court may hear any objections and so rule.  This Court **grants, in part,** the motion with respect to Brighton.

Because no party has made this Court aware of its intent to admit evidence of Castillo's coverage or non-coverage by liability insurance, this Court **grants, in part,** the motion with respect to Castillo.  The parties, their counsel, and the witnesses are not to mention or admit evidence of Castillo's coverage or non-coverage by liability insurance.  The parties are to instruct their own witnesses of this ruling and not to testify regarding Castillo's coverage or non-coverage by liability insurance.  This ruling is without prejudice; if a party later seeks to offer such evidence for a purpose allowed by Rule 411, that party is to raise this intent outside the presence of the jury, prior to eliciting the evidence, so that this Court may rule on any objections.

    3. <u>Testimony of State Farm's Expert Witnesses</u>

"Castillo requests an order *in limine* excluding testimony from State Farm's experts as set

forth in Castillo's" *Daubert* motion, brief, and reply. [Docket 44] at 2. State Farm opposes, "[f]or the reasons stated in its memorandum in opposition to [Castillo's] *Daubert* motion." [Docket 47] at 2. Brighton did not respond. This Court, for the same reasons it denied Castillo's *Daubert* motion, **denies** this motion.

 4. Cost of "Replacement"

Castillo seeks to exclude "[e]vidence of the cost of 'replacement' of items without evidence of the value of the things or items replaced." [Docket 43] at 1. Castillo argues that State Farm should not be permitted to tell the jury how much it paid to the homeowner for the personal property portion of the homeowner's claim because this value is not equivalent to State Farm's alleged legal claim as subrogee. Castillo argues, "Where State Farm has no evidence of the value or replacement cost of the items that were allegedly damaged, State Farm should not be allowed to blackboard the amount it reimbursed its insureds for replacement." [Docket 44] at 3. State Farm responds that it "does not contest the fact that the recoverable damages in this case are limited to those recoverable under Mississippi law." [Docket 46] at 1; [Docket 47] at 2–3.

Castillo does cite a rule which makes inadmissible the amount State Farm paid to the homeowner to replace personal property. If Castillo is claiming this amount is irrelevant, Castillo has not demonstrated that the evidence does not meet the permissive standard for relevance. *See* Fed. R. Evid. 401, 402. If Castillo is claiming that this evidence is prejudicial, Castillo has not demonstrated that the likelihood of unfair prejudice substantially outweighs the evidence's probative value. *See* Fed. R. Evid. 403. If Castillo is arguing that the number lacks foundation, Castillo's argument is premature, particularly in light of State Farm's proffer that the homeowner will testify. [Docket 47] at 3. Further, this Court is permitting Castillo to contest the propriety of State Farm's payouts with expert testimony.

While Castillo is correct that the "mere fact that State Farm *paid* its insureds for certain

personal property does not automatically make that payment recoverable in this subrogation action," [Docket 44] at 3, State Farm apparently concedes this, [Docket 47] at 2–3. This Court **denies** this motion as vague and premature. Regardless, Castillo is of course welcome to object at trial to the mention of or admission of evidence showing State Farm's payouts as appropriate and may test, controvert, and argue the weight the jury should give to such evidence. Castillo may also submit a proposed jury instruction to cure any confusion on the damages standard.

### III.   CONCLUSION

Castillo also moves this Court to "instruct the plaintiff, defendants, their counsel and their witnesses not to make any reference or inference to the fact that [Castillo's motion *in limine*] has been filed, argued or ruled upon by this Court, and further that each counsel be instructed to warn and caution each and every witness appearing at the trial hereof to strictly comply with the ruling of the Court herein." This Court **grants in part** this motion. This Court, presently, sees no legitimate reason for counsel or the witnesses to comment, in front of the jury, on pretrial motions, associated briefing, or this Court's orders. The parties should conduct themselves accordingly, including by appropriately instructing their own witnesses of this order.

**IT IS THEREFORE ORDERED**, as described in the foregoing opinion:

1. [Docket 27] is **GRANTED IN PART** and **DENIED IN PART**, where:
    a. the motion to exclude expert testimony from Donaldo Castillo is **GRANTED**, and
    b. the motion to exclude the expert testimony of Pierce Klassen is **DENIED**;
2. [Docket 31] is **DENIED**; and
3. [Docket 43] is **GRANTED IN PART** and **DENIED IN PART**, where:
    a. the motion to exclude evidence of settlement offers at trial is **GRANTED IN PART**,

    b. the motion to exclude evidence of liability insurance or lack of liability insurance on the part of any defendant at trial is **GRANTED IN PART**,

    c. the motion to exclude certain testimony from State Farm's experts Timothy Hassenboehler and Norman Presson at trial is **DENIED**, and

    d. the motion to exclude evidence of the cost of "replacement" of items without evidence of the value of the things or items replaced is **DENIED**.

**SO ORDERED this the**  28th  **day of**  September , 2024.

                                            **/s/ HENRY T. WINGATE**
                                              **UNITED STATES DISTRICT COURT JUDGE**